IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. MILLER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DAVID W. MILLER, APPELLANT.

Filed January 26, 2016.    No. A-15-731.

Appeal from the District Court for Lancaster County: STEPHANIE F. STACY, Judge. Affirmed.

Lisa F. Lozano for appellant.

Douglas J. Peterson, Attorney General, and George R. Love for appellee.

IRWIN, PIRTLE, and RIEDMANN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

David W. Miller appeals from his convictions and sentences in the Lancaster County District Court. On appeal, he challenges the denial of his motion to suppress, the sufficiency of the evidence, and his sentences. Finding no merit to the arguments raised on appeal, we affirm.

## BACKGROUND

On January 17, 2014, the State filed an information charging Miller with one count of delivery or possession with intent to deliver marijuana and six counts of possession of a controlled substance. The charges against Miller were based on evidence seized in a search of Miller's residence, which was conducted pursuant to a search warrant.

Prior to trial, Miller filed a motion to suppress all evidence seized as a result of the search of his residence. Miller argued that the search warrant was issued on the basis of an affidavit that failed to establish probable cause.

The search warrant for Miller's residence was issued by the Lancaster County Court. The county court concluded that the affidavit of Michael J. Schmidt, a Lincoln, Nebraska, police officer, established probable cause to support issuance of the warrant. In the affidavit, Schmidt stated that he was involved in the investigation of a case regarding the use and sale of marijuana occurring at Miller's residence in Lincoln.

Schmidt averred that on April 30, 2013, an anonymous tip was made through Crime Stopper advising that Miller and his brother were operating a "marijuana grow" inside their residence. According to Schmidt, the Crime Stopper tip was very specific and reported that Miller and his brother had juvenile and adult plants in the residence, there were plants drying in the residence, and the grow operation was a "complicated system" with oxygen systems and timers.

Schmidt further stated that through investigation, Lincoln police confirmed that Miller had given the address provided by the Crime Stopper tip during contact with police in 2012. Schmidt also stated that police had discovered a psilocybin mushroom grow at Miller's residence in 2008, and he had been convicted of possession of drug paraphernalia in 2009 and 2010.

According to the affidavit, on July 18, 2013, while conducting surveillance on Miller's residence, Schmidt observed a white male seated in a vehicle outside of the residence. The occupant entered Miller's residence and exited approximately 30 minutes later, reentered his vehicle, and left the area. Police followed the vehicle and made contact with the sole occupant. The occupant was found to be Grant Gelecki. Immediately upon contacting Gelecki at the driver's door, Schmidt and another investigator smelled the strong odor of fresh marijuana emitting from the vehicle. Gelecki admitted to having 1/8 ounce of marijuana in a backpack which was located on the front passenger seat of the vehicle. Schmidt averred that the marijuana was located by the other investigator and later found to weigh 6.9 grams in the packaging.

Schmidt detailed in the affidavit that Gelecki was read his *Miranda* rights, which he waived, and was interviewed. Gelecki advised that he had just left the residence of his friend, Miller. Gelecki informed the investigators that he had gone to Miller's residence with the intent to purchase 1/8 ounce of marijuana from Miller for $40, which he did. According to the affidavit, Gelecki told Schmidt that he had "done this" on approximately ten other occasions over the prior year. Gelecki stated that the narcotics transaction took place in the basement of the residence, where he observed additional quantities of marijuana totaling approximately one ounce. According to Schmidt's affidavit, the other investigator advised Schmidt that Gelecki later estimated the amount of marijuana in the residence at approximately one pound. Schmidt's affidavit stated that Gelecki also observed various paraphernalia in the residence including a marijuana "bong" and a marijuana pipe. Gelecki denied observing any equipment consistent with a marijuana grow; admitting, however, that he had not seen the entire residence, so it was possible that an active grow existed.

A hearing on Miller's motion to suppress was held on October 2, 2014. Miller argued that the affidavit failed to establish Gelecki's credibility and that the Crime Stopper tip was stale by the time police applied for the search warrant. In a subsequent written order, the district court overruled Miller's motion to suppress.

A bench trial on stipulated facts was held on March 5, 2015. The only evidence received were two exhibits offered by the State. According to the evidence, the search warrant was issued and executed on Miller's residence on July 19, 2013. Upon execution, officers located a marijuana grow operation throughout Miller's residence. Numerous items were seized, including 18 marijuana plants; 2,019.1 grams of marijuana; 147.9 grams of suspected THC edibles; 42.7 grams of marijuana seeds; 0.6 grams of extracted THC powder; 4.9 grams of suspected hash oil; 8.6 grams of "Molly" or MDMA; 24 grams of psilocybin mushrooms; 7.19 grams of ketamine; LSD on blotter paper; 1 suspected LSD candy; and 0.97 grams of a substance comprised of MDMA, 4-MEC, and methylone.

The district court subsequently found Miller guilty of all seven counts. He was sentenced to 2 to 4 years' imprisonment on Count I, and 1 to 2 years' imprisonment on each of the remaining counts. Counts II through VII were ordered to be served concurrently to one another but consecutively to Count I. Miller now appeals to this court.

ASSIGNMENTS OF ERROR

Miller assigns that the district court erred in (1) overruling his motion to suppress, (2) finding him guilty of the charges, and (3) imposing excessive sentences.

ANALYSIS

*Motion to Suppress.*

Miller claims that the district court erred in overruling his motion to suppress evidence obtained from the search of his home. He specifically argues that the information contained in the affidavit in support of the search warrant was insufficient and unreliable because it failed to establish Gelecki's credibility and that the information provided in the Crime Stopper tip was stale. We find no merit to these arguments.

A claim that an affidavit is insufficient to justify issuance of a search warrant is a Fourth Amendment claim. *State v. Schuller*, 287 Neb. 500, 843 N.W.2d 626 (2014). In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, an appellate court applies a two-part standard of review. Regarding historical facts, an appellate court reviews the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that an appellate court reviews independently of the trial court's determination. *Id.*

In reviewing the strength of an affidavit submitted as a basis for finding probable cause to issue a search warrant, an appellate court applies a "totality of the circumstances" test; under this test, the question is whether, under the totality of the circumstances illustrated by the affidavit, the issuing magistrate had a substantial basis for finding that the affidavit established probable cause. *State v. Lammers*, 267 Neb. 679, 676 N.W.2d 716 (2004).

Where a search warrant is obtained on the strength of information from an informant, the affidavit must set forth facts showing the basis of the informant's knowledge of the criminal activity. *Id.* An informant's reliability may be established by showing in the affidavit to obtain a search warrant that (1) the informant has given reliable information to police officers in the past, (2) the informant is a citizen informant, (3) the informant has made a statement that is against his

or her penal interest, or (4) a police officer's independent investigation establishes the informant's reliability or the reliability of the information the informant has given. *Id*.

In the present case, Gelecki's reliability was established by the fact that he made a statement against his penal interest. Upon the initial contact police made with Gelecki and their indication that they smelled the odor of marijuana, Gelecki immediately admitted to possessing marijuana. This statement was against his penal interest because it could have been used to charge him with possession of a controlled substance. See *State v. Ildefonso*, 262 Neb. 672, 634 N.W.2d 252 (2002).

Miller acknowledges that Gelecki admitted to being in possession of marijuana but argues that his statements are not credible based on the idea that they were statements made against his penal interests because he also made numerous statements against Miller's interests. The fact that Gelecki made additional statements against another's interests does not render his information unreliable. A statement against penal interest, in and of itself, carries a sufficient indicia of reliability to support a finding of probable cause. *State v. Ildefonso, supra*. Admissions of crime, like admissions against proprietary interests, carry their own indicia of credibility--sufficient at least to support a finding of probable cause to search. *Id*. That the informant may be paid or promised a break does not eliminate the residual risk and opprobrium of having admitted criminal conduct. *Id*. We therefore conclude that Gelecki's statement against penal interest established his reliability and supported the finding of probable cause.

Miller also asserts that the information provided via the Crime Stopper tip had become stale by the time police applied for the search warrant, and therefore, it was insufficient to support issuance of the warrant. We disagree.

Proof of probable cause justifying the issuance of a search warrant generally must consist of facts so closely related to the time of issuance of the warrant as to justify a finding of probable cause at that time. *State v. Bossow*, 274 Neb. 836, 744 N.W.2d 43 (2008). There is no bright-line test for determining when information is stale. *Id*. Whether the averments in an affidavit are sufficiently timed to establish probable cause depends on the particular circumstances of the case, and the vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit. *Id*. Time factors must be examined in the context of a specific case and the nature of the crime under investigation. *Id*. Where the affidavit in support of a search warrant recites a mere isolated violation, it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time. *Id*. However, where the affidavit properly recites facts indicating activity of a protracted and continuous nature--a course of conduct--the passage of time becomes less significant. *Id*.

Here, the Crime Stopper tip received on April 30, 2013 reported that there were juvenile and adult marijuana plants at Miller's residence, there were plants drying in the residence, and that there was a complicated grow operation at the residence. Less than 3 months later, Gelecki admitted that he had purchased marijuana from Miller at Miller's residence, an act he had done at least 10 times over the prior year. A marijuana growing operation complete with varying ages of plants is not evidence of an isolated crime, but rather, it establishes an ongoing course of conduct for which the passage of a few months becomes less significant. This information, coupled with Gelecki's purchase of marijuana from Miller a few hours before police applied for the search warrant, supports a finding that the Crime Stopper tip had not become too stale to assist in

establishing probable cause for issuance of the search warrant. We therefore conclude that the district court did not err in overruling Miller's motion to suppress.

*Sufficiency of Evidence.*

Miller also assigns that the district court erred in finding him guilty of the charges, or in other words, he claims the court erred in finding sufficient evidence to convict him. The totality of his argument is that had the motion to suppress been granted, there would be insufficient evidence to convict him; he does not argue that the admitted evidence was insufficient. Because we conclude above that the motion to suppress was properly denied, we need not further discuss this assigned error.

*Excessive Sentence.*

In his final assignment of error, Miller claims that he received excessive sentences. We find no abuse of discretion in Miller's sentences.

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015).

Deliver or possession with intent to deliver marijuana is a Class III felony. See Neb. Rev. Stat. §§ 28-416(2)(b) (Supp. 2013); 28-405 (Supp. 2013). A Class III felony, at the time Miller was sentenced, was punishable by 1 to 20 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2014). Miller's sentence on this count was 2 to 4 years' imprisonment.

Possession of a controlled substance is a Class IV felony. § 28-416(3). At the time Miller was sentenced, Class IV felonies carried a maximum sentence of 5 years' imprisonment. § 28-105. Miller received sentences of 1 to 2 years' imprisonment on each of these six counts. Thus, Miller's sentences all fall within the statutory limits and will be reviewed for an abuse of discretion.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Cullen*, 292 Neb. 30, 870 N.W.2d 784 (2015). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Miller was 27 years old at the time of sentencing. His criminal history includes several prior drug offenses. He was previously placed on 2 years' probation, but his probation was revoked and he served jail time. In filing the violation of probation in 2010, the probation department reported that Miller continued to push the limits during his probationary period and was always looking for a way around the requirements of his probation. For example, probation noted that Miller was prohibited from smoking marijuana, so he would smoke "Black Magic" or "K2" knowing there were no tests for those substances. Miller reported to probation that he smokes "a bowl or two" of marijuana per day, but he does not believe he has a drug problem or needs treatment.

At sentencing, the district court indicated that it reviewed all of the information contained in the presentence investigation report and considered all of the statutorily required factors. The

court acknowledged that Miller does not have any prior felony convictions, but it pointed out that this is the second time he has been charged in connection with a grow operation in his home. And he has been given fines, diversion, probation, and a jail sentence, but he still has not changed his behavior. The court questioned what it would take for Miller to change his behavior. Upon our review of the record and considering the relevant sentencing factors, we do not find Miller's sentences to be an abuse of discretion.

## CONCLUSION

We conclude that the district court properly overruled Miller's motion to suppress, that the evidence is sufficient to sustain the convictions, and that Miller's sentences are not an abuse of discretion. We therefore affirm.

AFFIRMED.